UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

2004 JUN 24  P 12: 11

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| PLAINTIFF,<br><br>A SLICE OF PIE PRODUCTIONS, LLC,<br>a Connecticut Limited Liability Company,<br><br>V.<br><br>DEFENDANTS,<br><br>WAYANS BROTHERS ENTERTAINMENT, a California Corporation; REVOLUTION STUDIOS, INC., a California Corporation; SONY PICTURES ENTERTAINMENT, a California Corporation; THE GOLD/MILLER AGENCY, a California Corporation and THE GERSH AGENCY, a California Corporation. | COMPLAINT<br><br>**304CV1034**<br><br>**JBA** |

## I. PARTIES

1.  At all times relevant to this Complaint, the Plaintiff, A SLICE OF PIE PRODUCTIONS, LLC, is a limited liability company duly organized and doing business in the State of Connecticut with a principal and current place of business located at 135 Dartley St. in Stamford, Connecticut, 06905 ("hereinafter referred to as "Plaintiff.")

2.  Upon information and belief, and at all times relevant to this Complaint, the Defendant, WAYANS BROTHERS ENTERTAINMENT, is a film production company and a California Corporation with a current place of business located at 9200 Sunset Boulevard, No. 106, Los Angeles, California, 90069 (hereinafter referred to individually as "Wayans Entertainment.")

3.  At all times relevant to this Complaint, the Defendant, REVOLUTIONS STUDIOS, INC., is a film production company and California Corporation with a

1

principal place of business currently located at 2900 West Olympic Boulevard in Santa Monica, California, 90404 (hereinafter referred to individually as "Revolution.")

4.  At all times relevant to this Complaint, the Defendant, SONY PICTURES ENTERTAINMENT, is a film production company and California Corporation with a principal place of business currently located at 10202 West Washington Boulevard Culver City, CA 90232 (hereinafter referred to individually as "Sony.")

5.  At all times relevant to this Complaint, the Defendant, GOLD/MILLER AGENCY, is a California Corporation in the business of providing management to certain actors in the film industry with a principal place of business currently located at 9220 Sunset Blvd. 10th Fl., Los Angeles, CA 90069 (hereinafter referred to individually as the "Gold Agency.")

6.  At all times relevant to this Complaint, the Defendant, THE GERSH AGENCY, is a California Corporation in the business of providing agency representation to certain actors in the film industry with a principal place of business currently located at 222 North Canon Dr., Beverly Hills, CA 90210 (hereinafter referred to individually as the "Gersh Agency.")

## II. JURISDICTION AND VENUE

7.  Plaintiff restates and reaffirms Paragraphs One through Six as if fully set forth herein.

8.  This Court has original subject matter jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. § 1125, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over the above-named Defendants pursuant to Connecticut General Statutes Annotated (C.G.S.A) § 52-59b and venue is proper pursuant to 28 U.S.C § 1391(c).

### III. STATEMENT OF FACTS

10.    Plaintiff restates and reaffirms Paragraphs One through Nine as if fully set forth herein.

11.    At all times relevant to this Complaint, The Plaintiff, Limited Liability Company, is composed of three managing principals, Mr. Jon Coppola, Mr. Jason Coppola and Mr. Mario Pittore (hereinafter collectively referred to as the "principals.")

12.    At all times relevant to this Complaint, through the Plaintiff, LLC, the principals created and composed a screenplay entitled *Johnny Bronx* sometime in 1997 which was registered with the Writer's Guild of America ("WGA") sometime in 1998 (hereinafter referred to as the "screenplay.")

13.    At all times relevant to this Complaint and in general terms, the plot of the screenplay involves a fumbling FBI agent who is an African American. In order to gain back the respect of the Bureau, through modern technology, he is converted to a white, Italian American mobster to infiltrate the mafia.

14.    At all times relevant to this Complaint, the screenplay contains ideas that, in absolute terms and within the film industry in particular, are specific, original, unique, novel and were never commercially available or used anywhere within the film industry prior to this Action.

15.    At all times relevant to this Complaint, the screenplay contained ides and concepts that constitute a property interest under Connecticut law.

3

At all times relevant to this Complaint, on or about October 22, 1999, the Plaintiff submitted the screenplay to Lisa Blum at the Gold Agency.

16.  At all times relevant to this Complaint and at the time of Plaintiff's submission of the screenplay to the Gold Agency, Lisa Blum and Ron Singer, employees of the Gold Agency, were the legal agents of the two Hollywood actors popularly known as the Wayans Brothers including Keenan Ivory, Sean and Marlan Wayans (hereinafter collectively referred to as the "Wayans Brothers.")

17.  At all times relevant to this Complaint, the Plaintiff submitted the screenplay to the Gold Agency with the specific hope and expectation that the Wayans Brothers would review the screenplay and be interested in either starring in or the production of a film based on the screenplay (hereinafter referred to as the "film.")

18.  At all times relevant to this Complaint and upon information and belief, at least one of the Wayans Brothers reviewed the screenplay.

19.  Upon information and belief and at all times relevant to this Complaint, at some time following Plaintiff's submission of the screenplay to the Gold Agency, the Plaintiff was notified by a representative of the Gold Agency that the Wayans Brothers were not interested in the screenplay or starring in the film.

20.  At all times relevant to this Complaint, sometime in July, 2001, the Plaintiff submitted the screenplay to a representative of the Gersh Agency.

21.  At all times relevant to this Complaint and at the time of Plaintiff's submission of the screenplay to the Gersh Agency, representatives of the Gersh Agency served as the legal agents of the Wayans Brothers.

22.     At all times relevant to this Complaint, the Plaintiff submitted the screenplay to the Gersh Agency with the specific hope and expectation that the Wayans Brothers would review the screenplay and be interested in either starring in or the production of a film based on the screenplay (hereinafter referred to as the "film.")

23.     At all times relevant to this Complaint and upon information and belief, at least one of the Wayans Brothers reviewed the screenplay.

24.     At all times relevant to this Complaint, at some time following Plaintiff's submission of the screenplay to the Gold Agency, the Plaintiff was notified by a representative of the Gold Agency that the Wayans Brothers were not interested in the screenplay or starring in the film.

25.     At all times relevant to this Complaint, sometime in July, 2001, the Plaintiff entered into an agreement with a third party for the financing and production of the film (hereinafter referred to as the "First Producer.")

26.     At all times relevant to this Complaint, sometime in April, 2004, the Plaintiff was approached and solicited by a separate third party who was interested in providing further financing and production for the film (hereinafter referred to as the "Second Producer.")

27.     At all times relevant to this Complaint, sometime in May, 2004, the Second Producer viewed a commercial and/or trailer concerning the film entitled *White Chicks* which was set for release on June 23, 2004.

28.     At all times relevant to this Complaint and upon information and belief, the film, *White Chicks*, involves two bumbling African American FBI agents who seek redemption through transformation into two undercover white women (hereinafter referred to as the "White Chicks film.")

29. At all times relevant to this Complaint, the White Chicks film was produced and distributed by the Defendants, Wayans Entertainment, Revolution and Sony.

30. At all times relevant to this Complaint and as a result of the Second Producer's viewing of the commercial and or trailer of the White Chicks film, on or about May 29, 2004, the Second Producer withdrew interest in the film and ceased all contact with the Plaintiff concerning any financing venture.

31. At all times relevant to this Complaint, the Second Producer ceased all interest in the production and financing of the film because of the stark similarities between the general idea, plot and scenes contained in the screenplay and that depicted in the trailer for the White Chicks film.

32. At all times relevant to this Complaint, on or about April 20, 2004, the Plaintiff obtained a copy of the screenplay for the White Chicks film and discovered that the general idea, plot, theme and even scenes contained therein were almost identical to that contained in the screenplay.

33. At all times relevant to this Complaint, on or about June 23, 2004, the White Chicks film was released and shown in movie theatres nationwide including theatres in Connecticut within the jurisdiction of this Court.

34. At all times relevant to this Complaint, the White Chicks film released and shown in movie theatres nationwide including theatres within the jurisdiction of this Court was based upon the novel and unique ideas, theme and plot contained in the screenplay.

### COUNT I: IDEA MISAPPROPRIATION AGAINST WAYANS ENTERTAINMENT, REVOLUTION AND SONY

35. Plaintiff restates and reaffirms Paragraphs One through Thirty-four as if fully set forth herein.

36. At all times relevant to this Complaint, the ideas, theme and plot contained in the screenplay were specific, novel and unique in absolute terms and in the film industry in particular, were never commercially available prior to this Action and constituted a property interest pursuant to Connecticut law (hereinafter collectively referred to as the "originality.")

37. At all times relevant to this Complaint, the Defendants used the originality found in the screenplay in writing, developing, producing, selling and distributing the White Chicks film without the consent, express or implied, permission or authorization of the Plaintiff.

38. At all times relevant to this Complaint, the Defendants wrongfully misappropriated the originality of the screenplay and used it to write, develop, produce, distribute, sell and profit from the White Chicks film.

39. At all times relevant to this Complaint, the Defendant's wrongful misappropriation of the originality of the screenplay used in the writing, developing, producing, selling and distributing of the White Chicks film without the consent, express or implied, permission or authorization of the Plaintiff has caused the Plaintiff harm.

WHEREFORE, for the foregoing reasons, the PLAINTIFF demands judgment against the Defendants for all harm incurred as a result of the wrongful misappropriation of the originality of the Plaintiff's screenplay including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this Action and whatever else this Court deems just and proper.

## COUNT II: UNJUST ENRICHMENT AGAINST WAYANS ENTERTAINMENT, REVOLUTION AND SONY

40. Plaintiff restates and reaffirms Paragraphs One through Thirty-nine as if fully set forth herein.

41. At all times relevant to this Complaint and as a result of the wrongful misappropriation of the originality of the Plaintiff's screenplay, the Defendants have unjustly benefited to the detriment of the Plaintiff.

42. At all times relevant to this Complaint and as a result of the wrongful misappropriation of the originality of the Plaintiff's screenplay and the unjust enrichment of the Defendant, the Plaintiff has been unduly harmed.

WHEREFORE, for the foregoing reasons, the PLAINTIFF demands judgment against the Defendants for all harm incurred as a result of the wrongful misappropriation of the originality of the Plaintiff's screenplay and the property interest therein, the harm incurred therein and the benefit conferred to the Defendants to the detriment of the Plaintiff, including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this Action and whatever else this Court deems just and proper.

## COUNT III: VIOLATION OF THE LANHAM ACT, TRADEMARK AND UNFAIR COMPETITION AGAINST WAYANS ENTERTAINMENT, REVOLUTION AND SONY

43. Plaintiff restates and reaffirms Paragraphs One through Forty-two as if fully set forth herein.

44. In pertinent part, 15 U.S.C. § 1125, § 43, provides as follows

> (a) (1) Any person who, on or in connection with any goods or services… uses in commerce any word, term, name, symbol, or device, or any combination thereof,

or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. See 15 U.S.C. § 1125, § 43.

45. At all times relevant to this Complaint, the Defendants have commercially, intentionally, willfully, knowingly and wrongfully developed, used, advertised, distributed and sold the originality of the screenplay of the Plaintiff without the consent, express or implied, permission or authorization of the Plaintiff, and have, therefore, falsely mislead and misrepresented the true origin of the White Chicks film by designating the originality as their own, causing mistake, confusion and deception as to the true origin of the screenplay and its originality in the false and deceptive advertising and promotion of the White Chicks film in violation of the Lanham Act as set forth above.

WHEREFORE, for the foregoing reasons, the PLAINTIFF demands judgment against the Defendants for all harm incurred as a result of the wrongful misappropriation of the originality of the Plaintiff's screenplay and the property interest therein and all false designation of the proper origin thereof, including without limitation, all sales, income and profit earned by the Defendants thereon, all attorney's fees and costs incurred thereon, all other relief available pursuant to the Lanham Act, all pre and post judgment

interest obtained therein, all costs incurred as a result of this Action and whatever else this Court deems just and proper.

### COUNT III: CONVERSION AGAINST WAYANS ENTERTAINMENT, REVOLUTION AND SONY

46. Plaintiff restates and reaffirms Paragraphs One through Fort-five as if fully set forth herein.

47. At all times relevant to this Complaint, the Plaintiff is the rightful owner of the screenplay, its originality and the property interest therein.

48. At all times relevant to this Complaint, the Defendants have wrongfully, intentionally and improperly exercised dominion and control over the originality, the screenplay and the property interest therein, and have converted the same to their own benefit, promotion, use, sale and profit.

WHEREFORE, for the foregoing reasons, the PLAINTIFF demands judgment against the Defendants for all harm incurred as a result of the conversion of the originality of the Plaintiff's screenplay and the property interest therein including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this Action and whatever else this Court deems just and proper.

### COUNT IV: BREACH OF IMPLIED CONTRACT AND BREACH OF FIDUCIARY DUTY AGAINST GOLD AND GERSH

49. Plaintiff restates and reaffirms Paragraphs One through Forty-eight as if fully set forth herein.

50. At all times relevant to this Complaint, the Plaintiff entered into an Agreement with the Defendants by which, through industry, custom and practice in the film industry,

the parties understood that any submission of any literary materials by Plaintiff, including the screenplay, its originality and the property interest therein, would be submitted to the Wayans Brothers for review in a confidential fashion and with the understanding that any such use thereof by Defendants or their clients would be subject to notification to the Plaintiff and compensation for the use thereof.

51. At all times relevant to this Complaint, the Defendants were acting as agents for the Wayans Brothers, the principal, and had the authority to act on their behalf.

52. At all times relevant to this Complaint, the Defendants had a fiduciary duty to the Plaintiff to operate ethically and in good faith and to inform the Plaintiff of any use of the screenplay, its originality and the property interest therein.

53. At all times relevant to this Complaint, the parties had a duty and relationship of trust and confidence to one and other through industry, custom and practice of the film industry.

54. At all times relevant to this Complaint, the Defendants breached that fiduciary duty of confidentiality, trust and confidence with the Plaintiff by using the screenplay, its originality and the property interest therein for profit and increased goodwill by providing the same to its client, the principal, the Wayans Brothers, and failing to inform the Plaintiff of the use thereof.

55. At all times relevant to this Complaint, as a result of the Defendants breach of fiduciary duty and implied contract between the parties and the use of the screenplay, its originality and the property interest therein for profit and increased goodwill, the Plaintiff has been harmed.

WHEREFORE, for the foregoing reasons, the PLAINTIFF demands judgment against the Defendants for all harm incurred as a result of the breach of the implied contract and fiduciary duty between the parties and the improper conversion of the originality of the Plaintiff's screenplay and the property interest therein including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, all costs incurred as a result of this Action and whatever else this Court deems just and proper.

COUNT I: VIOLATION OF C.U.T.P.A. AGAINST ALL DEFENDANTS

55. Plaintiff restates and reaffirms Paragraphs One through Fifty-fourt as if fully set forth herein.

56. At all times relevant to this Complaint, the Defendants were engaged in the conduct of trade and commerce in the State of Connecticut within the meaning of C.G.S. § 42-110a et. seq.

57. At all times relevant to this Complaint, the Defendants have offended public policy as it has been established by common law, statute and otherwise, violated the Connecticut Unfair Trade Practices Act, § 42-110b, by willfully, maliciously and unethically engaging in unfair methods of competition and unfair and deceptive acts and practices in trade and commerce by misappropriating the originality of the Plaintiff's screenplay and the property interest therein, breaching their respective fiduciary duties and implied contracts with the Plaintiff and profiting therefrom to the loss and detriment of the Plaintiff.

58. At all times relevant to this Complaint, the Plaintiff has suffered damages and an ascertainable loss as defined by C.G.S. § 42-110g(a).

59. At all times relevant to this Complaint, a copy of the Complaint will be served upon the Attorney General and Commissioner of Consumer Protection in accordance with C.G.S. §42-110g(e).

## GENERAL JURSIDICTION AND VENUE

60. All Defendants have purposely availed themselves of this jurisdiction by contracting and transacting business in the state of Connecticut with both the Plaintiff and other Connecticut-based production and distribution companies, the business and contractual agreements of which have given rise to this litigation; by committing tortious acts in this State, the misappropriation of ideas, conversion and breach of fiduciary duty, which have given rise to this litigation; and, as a general matter, have regularly and persistently solicited business in the State of Connecticut and derived substantial revenue from this jurisdiction including, without limitation, the distribution, sale and release of the subject film in this State and revenues derived therefrom through the State of Connecticut.

WHEREFORE, for the foregoing reasons, the PLAINTIFF demands judgment against the Defendants for their CUTPA violations including, without limitation, all sales, income and profit earned by the Defendants thereon, treble damages, attorney's fees, all pre and post judgment interest obtained therein, all costs incurred as a result of this Action and whatever else this Court deems just and proper pursuant to CUTPA and otherwise.

## Jury Demand

The Plaintiff hereby requests a trial by jury on all Counts set forth herein.

                                                Respectfully submitted,
                                                Plaintiff,
                                                Counsel for Plaintiff,

Dated: June 23, 2004                         */s/ Scott Schwefel*
                                                C. Scott Schwefel
                                                33 Kingston St., Fourth Fl.
                                                Boston, MA 02111
                                                (617) 451-0222
                                                Fed. Bar: #CT19324