UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PLAINTIFF, <br><br> A SLICE OF PIE PRODUCTIONS, LLC, <br> a Connecticut Limited Liability Company, <br><br> V. <br><br> DEFENDANTS, <br><br> WAYANS BROTHERS ENTERTAINMENT, a California Corporation; REVOLUTION STUDIOS, INC., a California Corporation; SONY PICTURES ENTERTAINMENT, a California Corporation; and THE GOLD/MILLER AGENCY, a California Corporation. | 3:04 CV 1034 (JBA) <br><br> FIFTH AMENDED COMPLAINT |

## I. PARTIES

1. At all times relevant to this Complaint, the Plaintiff, A SLICE OF PIE PRODUCTIONS, LLC, is a limited liability company duly organized and doing business in the State of Connecticut with a principal and current place of business located at 135 Dartley St. in Stamford, Connecticut, 06905 ("hereinafter referred to as "Plaintiff.")

2. Upon information and belief, and at all times relevant to this Complaint, the Defendant, WAYANS BROTHERS ENTERTAINMENT, is a film production company and a California Corporation with a current place of business located at 9200 Sunset Boulevard, No. 106, Los Angeles, California, 90069 (hereinafter referred to individually as "Wayans Entertainment.")

3. At all times relevant to this Complaint, the Defendant, REVOLUTIONS STUDIOS, INC., is a film production company and California Corporation with a

1

principal place of business currently located at 2900 West Olympic Boulevard in Santa Monica, California, 90404 (hereinafter referred to individually as "Revolution.")

4. At all times relevant to this Complaint, the Defendant, SONY PICTURES ENTERTAINMENT, is a film production company and California Corporation with a principal place of business currently located at 10202 West Washington Boulevard Culver City, CA 90232 (hereinafter referred to individually as "Sony.")

5. At all times relevant to this Complaint, the Defendant, GOLD/MILLER AGENCY, is a California Corporation in the business of providing management to certain actors in the film industry with a principal place of business currently located at 9220 Sunset Blvd. 10th Fl., Los Angeles, CA 90069 (hereinafter referred to individually as the "Gold Agency.")

6. At all times relevant to this Complaint, THE GERSH AGENCY, is a California Corporation in the business of providing agency representation to certain actors in the film industry with a principal place of business currently located at 222 North Canon Dr., Beverly Hills, CA 90210 (hereinafter referred to individually as the "Gersh Agency.")

II. JURISDICTION AND VENUE

7. Plaintiff restates and reaffirms Paragraphs One through Six as if fully set forth herein.

8. This Court has original subject matter jurisdiction over this action pursuant to the the United States Copyright Act, Title 17 of the United States Code and 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(3).

This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

9.  This Court has personal jurisdiction over the above-named Defendants pursuant to Connecticut General Statutes Annotated (C.G.S.A) § 52-59b and venue is proper pursuant to 28 U.S.C § 1391(c) and 28 U.S.C. Section 1400(a).

### III. STATEMENT OF FACTS

10. Plaintiff restates and reaffirms Paragraphs One through Nine as if fully set forth herein.

11. At all times relevant to this Complaint, The Plaintiff, Limited Liability Company, is composed of three managing principals, Mr. Jon Coppola, Mr. Jason Coppola and Mr. Mario Pittore (hereinafter collectively referred to as the "principals.")

12. At all times relevant to this Complaint, through the Plaintiff, LLC, the principals created and composed a screenplay entitled *Johnny Bronx* sometime in 1997 which was registered with the Writer's Guild of America ("WGA") sometime in 1998 and subsequently registered with the United States Copyright Office as Registration Number TXu-194-165 (hereinafter referred to as the "screenplay.")

13. At all times relevant to this Complaint and in general terms, the plot of the screenplay involves a fumbling FBI agent who is an African American. In order to gain back the respect of the Bureau, through modern technology, he is converted to a white, Italian American mobster to infiltrate the mafia.

14. At all times relevant to this Complaint, the screenplay contains ideas that, in absolute terms and within the film industry in particular, are specific, original, unique,

novel and were never commercially available or used anywhere within the film industry prior to this Action.

15. At all times relevant to this Complaint, the screenplay contained ideas and concepts that constitute a property interest under Connecticut law. At all times relevant to this Complaint, on or about October 22, 1999, the Plaintiff submitted the screenplay to Lisa Blum at the Gold Agency.

16. At all times relevant to this Complaint and at the time of Plaintiff's submission of the screenplay to the Gold Agency, Lisa Blum, employee of the Gold Agency, was the legal agent of the two Hollywood actors popularly known as the Wayans Brothers including Keenan Ivory, Sean and Marlan Wayans (hereinafter collectively referred to as the "Wayans Brothers.")

17. At all times relevant to this Complaint, the Plaintiff's legal agent at the time, Ron Singer of the Geddes Agency, contacted Lisa Blum to discuss the screenplay and the Plaintiff's interest in having the Wayans Brothers star in the film based upon said screenplay (hereinafter "the film"); on behalf of the Wayans Brothers, Ms. Blum requested a copy of the script from Mr. Singer for review and provision of the same to the Wayans Brothers.

18. At all times relevant to this Complaint and upon information and belief, at least one of the Wayans Brothers reviewed the screenplay.

19. Upon information and belief and at all times relevant to this Complaint, at some time following Plaintiff's submission of the screenplay to the Gold Agency, the Plaintiff was notified by a representative of the Gold Agency that the Wayans Brothers were not interested in the screenplay or starring in the film.

20. At all times relevant to this Complaint, sometime in July, 2001, the Plaintiff submitted the screenplay to a representative of the Gersh Agency; at all times relevant to this Complaint, Rueben Canon, producer and agent of the Plaintiff at the time, contacted Laurie Bartlett, representative and agent of the Marlon Wayans and employee of the Gersh Agency at the time to discuss the screenplay; at all times relevant to this Complaint, Ms. Bartlett requested a copy of the screenplay from the Plaintiff's agent and, in turn, contacted Lisa Blum and Rick Alvarez of Gold who requested a copy of the screenplay on behalf of Marlon Wayans and subsequently read the same on behalf of Marlon Wayans; at all times relevant to this Complaint, due to the request and interest expressed in the screenplay by Ms. Blum and Mr. Alvarez on behalf of Marlon Wayans, Ms. Bartlett forwarded a copy of the screenplay directly to Marlon Wayans for review.

21. At all times relevant to this Complaint and at the time of Plaintiff's submission of the screenplay to the Gersh Agency, representatives of the Gersh Agency served as the legal agents of the Wayans Brothers.

22. At all times relevant to this Complaint, the Plaintiff submitted the screenplay to the Gersh Agency with the specific hope and expectation that the Wayans Brothers would review the screenplay and be interested in either starring in or the production of a film based on the screenplay (hereinafter referred to as the "film.")

23. At all times relevant to this Complaint, the Gersh Agency provided a copy of the screenplay to at least one of the Wayans Brothers and his representatives at the Gold Agency; all said parties reviewed the screenplay.

24. At all times relevant to this Complaint, at some time following Plaintiff's submission of the screenplay to the Gold Agency, the Plaintiff was notified by a

representative of the Gold Agency that the Wayans Brothers were not interested in the screenplay or starring in the film.

25. At all times relevant to this Complaint, sometime in July, 2001, the Plaintiff entered into an agreement with a third party for the financing and production of the film (hereinafter referred to as the "First Producer.")

26. At all times relevant to this Complaint, sometime in April, 2004, the Plaintiff was approached and solicited by a separate third party who was interested in providing further financing and production for the film (hereinafter referred to as the "Second Producer.")

27. At all times relevant to this Complaint, sometime in May, 2004, the Second Producer viewed a commercial and/or trailer concerning the film entitled *White Chicks* which was set for release on June 23, 2004.

28. At all times relevant to this Complaint and upon information and belief, the film, *White Chicks*, involves two bumbling African American FBI agents who seek redemption through transformation into two undercover white women (hereinafter referred to as the "White Chicks film.")

29. At all times relevant to this Complaint, the White Chicks film was produced and distributed by the Defendants, Wayans Entertainment, Revolution and Sony.

30. At all times relevant to this Complaint and as a result of the Second Producer's viewing of the commercial and or trailer of the White Chicks film, on or about May 29, 2004, the Second Producer withdrew interest in the film and ceased all contact with the Plaintiff concerning any financing venture.

31. At all times relevant to this Complaint, the Second Producer ceased all interest in the production and financing of the film because of the stark similarities between the

general idea, plot and scenes contained in the screenplay and that depicted in the trailer for the White Chicks film.

32. At all times relevant to this Complaint, on or about April 20, 2004, the Plaintiff obtained a copy of the screenplay for the White Chicks film and discovered that the general idea, plot, theme and even scenes contained therein were almost identical to that contained in the screenplay.

33. At all times relevant to this Complaint, on or about June 23, 2004, the White Chicks film, which was based upon the White Chicks screenplay, was released and shown in movie theatres nationwide including theatres in Connecticut within the jurisdiction of this Court.

34. At all times relevant to this Complaint, the White Chicks film released and shown in movie theatres nationwide including theatres within the jurisdiction of this Court was based upon the novel and unique ideas, theme and plot contained in the screenplay.

<u>COUNT I: COPYRIGHT INFRINGEMENT AGAINST REVOLUTION AND SONY</u>

35. Plaintiff restates and re-alleges paragraphs One through Forty as if fully set forth herein.

36. At all times relevant to this Complaint, the screenplay constitutes a registered work pursuant to the terms of the United States Copyright Act, Registration Number TXu1-194-165 including, without limitation, Title 17 U.S.C., Sections 408 and 409.

37. At all times relevant to this Complaint, the screenplay is considered a work entitled to copyright protection pursuant to the United States Copyright Act.

38. At all times relevant to this complaint, the Defendants' copying, downloading, use, modification, reproduction display and distribution of the screenplay, including

without limitation, the ideas, concepts, theme, text and plot contained therein and all derivatives thereof, constitutes a violation of the United States Copyright Act, Title 17 U.S.C., Sections 501(a), 106(1), 106(2) and 106(3) specifically infringing Plaintiff's exclusive rights under 17 U.S.C., Section 106 of the Copyright Act of 1976 and acting as an infringer within the meaning of 17 U.S.C., Section 501(a).

39. At all times relevant to this Complaint and upon information and belief, the Defendants have derived substantial revenues from the unauthorized use, copying, modification, reproduction, distribution and display of Plaintiffs' work (the "screenplay") and all derivative thereof, has caused and will continue to cause Plaintiff substantial and irreparable harm including monetary damages and lost revenue.

40. At all times relevant to this Complaint and upon information and belief, the Defendants' conduct set forth herein has been willful and intentional within the meaning of the United States Copyright Act.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment for damages against Defendants including but not limited to all damages for Defendants' willful copyright infringement, statutory damages pursuant to the statute and all sales, income and profits obtained thereon, all pre and post-judgment interest and all attorney's fees and costs incurred in pursuing this action and whatever this Court may deem additionally just and proper.

COUNT II: BREACH OF IMPLIED CONTRACT AGAINST GOLD AND WAYANS BROTHERS

41. Plaintiff restates and reaffirms Paragraphs One through Forty as if fully set forth herein.

42.     At all times relevant to this Complaint, the Plaintiff entered into an Agreement with the Defendants by which, through industry, custom and practice in the film industry, the parties understood that any submission of any literary materials by Plaintiff, including the screenplay, its originality and the property interest therein, would be submitted to the Wayans Brothers, its agents and representatives, for review in a confidential fashion and with the understanding that any such use thereof by Defendants or their clients would be subject to notification to the Plaintiff and compensation for the use thereof.

43.     At all times relevant to this Complaint, the Defendant, Gold, was acting as agent for the Wayans Brothers, the principal, and had the authority to act on their behalf.

44.     At all times relevant to this Complaint, an implied contract existed between the Plaintiff and Defendants, in that, the circumstances preceding and attending disclosure of the screenplay, together with the conduct of the Defendant, acting with knowledge of the circumstances, show a clear promise to pay and/or compensate the Plaintiff for the use and/or exploitation of the screenplay and/or film.

45.     At all times relevant to this Complaint, as a result of the Defendants breach of implied contract between the parties and the use of the screenplay, its originality and the property interest therein for profit and increased goodwill, the Plaintiff has been harmed.

WHEREFORE, for the foregoing reasons, the PLAINTIFF demands judgment against the Defendants for all harm incurred as a result of the breach of the implied contract between the parties and the improper conversion of the originality of the Plaintiff's screenplay and the property interest therein including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment

interest obtained therein, all costs incurred as a result of this Action and whatever else this Court deems just and proper.

## GENERAL JURSIDICTION AND VENUE

49. All Defendants have purposely availed themselves of this jurisdiction by contracting and transacting business in the state of Connecticut with both the Plaintiff and other Connecticut-based production and distribution companies, the business and contractual agreements of which have given rise to this litigation; by committing tortious acts in this State, the misappropriation of ideas, conversion and breach of fiduciary duty, which have given rise to this litigation; have regularly and persistently solicited business in the State of Connecticut and derived substantial revenue from this jurisdiction including, without limitation, the distribution, sale and release of the subject film, which gives rise to this litigation, in this State and revenues wrongfully derived therefrom through the State of Connecticut; and have engaged in the distribution, sale and release of the subject film, which gives rise to this litigation, in this State of Connecticut through the unauthorized use, copying, modification, reproduction, distribution and display of Plaintiffs' work (the "screenplay") and all derivative thereof which has wrongfully provided Defendants substantial revenue through the State of Connecticut and caused the Plaintiff irreparable harm.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts set forth above.

Dated: October 25, 2005

Respectfully submitted,
Plaintiff,
Counsel for Plaintiff,

*/s/ Jerrold G. Neeff*

Jerrold G. Neeff
Ct26119
The Bostonian Law Group
33 Kingston St., Fourth Fl.
Boston, MA 02111
Jerry@Bostonianlaw.com
(617) 338-1046
BBO# 635307

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiff's Fifth Amended Complaint was served upon the attorney(s) of record for each other party by mail on January 5, 2006 including the following.

Glenn M. Cunningham, Esq.
Shipman & Goodwin
One Constitution Plaza
Hartford, CT 06103-1919

Alan Neigher, Esq.
Byelas & Neigher
1804 Post Road East
Westport, CT 06880-5683

*/s/ Jerrold G. Neeff*

Jerrold G. Neeff