```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

A SLICE OF PIE PRODUCTIONS, LLC,  :
                                  :
v.                                :      No. 3:04cv1034 (JBA)
                                  :
WAYANS BROTHERS                   :
ENTERTAINMENT, et al.             :

### Ruling on Defendant Gold/Miller Company's Motion to Dismiss [Doc. # 70]

#### I.   INTRODUCTION

The fifth amended complaint by plaintiff A Slice of Pie Productions, LLC, ("Slice of Pie") asserts a claim against Defendant Gold/Miller Company ("Gold") for breach of implied contract (Count II).  Gold now moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Count II on the ground that plaintiff's action, filed on June 23, 2004, was commenced after the expiration of the applicable statute of limitations.  For the reasons set forth below, defendant's motion is denied.

##### A.   Factual and Procedural Background

In 1997, Jon Coppola, Jason Coppola, and Mario Pittore, the principals of Slice of Pie, wrote and copyrighted a screenplay entitled Johnny Bronx, about an African American FBI agent who disguises himself as a white Italian American in order to infiltrate the mafia.  See A Slice of Pie Prod., LLC, v. Wayans Brothers Entm't., 392 F. Supp. 2d 297, 302 (D. Conn. 2005). Plaintiff alleges that on or about October 22, 1999, Gold (a talent management agency) requested a copy of the screenplay on

behalf of one of its clients, the Wayans Brothers Production Company ("Wayans").  See id.  The screenplay was allegedly given to Wayans, and Gold subsequently notified Slice of Pie that Wayans was not interested in making a movie based upon it.  See id.  In July, 2001, Gold again received a copy of Johnny Bronx, this time through the Gersh Agency ("Gersh").  See id.  Again Gold notified plaintiff that Wayans was not interested.  See id.

On April 20, 2004, plaintiff obtained a copy of the White Chicks screenplay and "discovered that the general idea, plot, theme and even scenes contained therein were almost identical to that contained [in the Johnny Bronx] screenplay."  Fifth Am. Compl. [Doc. #74] at ¶ 32.  On June 23, 2004, White Chicks was released to theaters nationwide.  See A Slice of Pie, 392 F. Supp. 2d at 302.  The film, developed and produced by Wayans, Revolution Studios, LLC ("Revolution") and Sony Pictures Entertainment ("Sony"), is about two African American male FBI agents who disguise themselves as white women.  See id.  After the release of White Chicks, funding that Slice of Pie had secured to independently produce a film based on the Johnny Bronx screenplay was withdrawn.  See id. at 302-03; Fifth Am. Compl. ¶¶ 30, 31.

Gold previously moved to dismiss (pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6)) for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state

a claim upon which relief could be granted.  See A Slice of Pie, 392 F. Supp. 2d at 301-02.  Gold also joined defendants Wayans, Revolution, and Sony in moving to transfer venue to the Central District of California, pursuant to either 28 U.S.C. §1404(a) or 1406(a).  See id.  Statute of limitations was not raised as a ground for Gold's first motion to dismiss.

On September 21, 2005, this Court ruled that: 1) personal and subject matter jurisdiction exist; 2) defendants had failed to establish the need for transfer; and 3) plaintiff's claim of breach of implied contract would not be dismissed.  See id. at 303-10.

Gold then filed an answer to plaintiff's complaint on October 21, 2005, denying the breach of implied contract and offering ten special defenses to the various claims, including bar by applicable statute of limitations.  See Answer and Defenses of Def. Gold/Miller Company [Doc. #67] at 6-8.  Almost two months after its answer, Gold filed this second 12(b)(6) motion.

**II.    STANDARD AND TIMELINESS OF MOTION**

Contrary to the requirements of Fed. R. Civ. P. 12, defendant filed this 12(b)(6) motion after its answer to plaintiff's complaint.  "A motion making any of [the Rule 12(b) defenses] shall be made before pleading if a further pleading is permitted."  Fed. R. Civ. P. 12(b).  While a strict application

of this rule could preclude defendant's motion, "federal courts have allowed untimely motions if the defense has been previously included in the answer."  Wright & Miller, 5C Fed. Prac. & Proc. Civ. 3d § 1361; See also Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., 850 F.2d 904, 909, n.2 (2d Cir. 1988).  In such cases, a 12(b)(6) motion brought after an answer to the complaint has been served is properly designated as a Rule 12(c) motion for judgment on the pleadings, which can be brought at any time.  See Ayerst Labs., 850 F.2d at 909.

"However, even though the 12(b)(6) defense is asserted through the procedural device of a 12(c) motion, the standards employed in determining the motion will be the same as if the defense had been raised prior to the closing of the pleadings." Shapiro v. Merril Lynch, Pierce, Fenner, & Smith, Inc., 353 F. Supp. 2d 264, 268 (S.D.N.Y. 1972); see also George C. Frey Ready-Mixed Concrete, Inc., v. Pine Hill Mix Corp., 554 F.2d 551, 553, n.2 (2d Cir. 1977).  In a motion to dismiss under Rule 12(b)(6), the Court "merely assesses the legal feasibility of the complaint, [it does] not . . . assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distrib. Corp. v. Merril Lynch Commodities Inc., 748 F.2d 774, 779 (2nd Cir. 1984) (internal quotation and citation omitted). Taking well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff, a court may dismiss a

4

complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  When a defense based on the statute of limitations is raised in a motion to dismiss, the court must decide whether the timing alleged in the complaint demonstrates that the cause of action could have occurred within the statute of limitations.  See Joslin v. Grossman, 107 F. Supp. 2d 150, 154 (D. Conn. 2000).

Since Gold's answer raised the statute of limitations defense, its 12(b)(6) motion will not be denied merely because it was brought after its answer, and it will be considered as a Rule 12(c) motion for judgment on the pleadings, but under the same standards of a 12(b)(6) motion.  See Ayerst Labs., 850 F.2d at 909.

**III. DISCUSSION**

Under California law, claims for breach of implied contract not founded upon an instrument of writing are governed by a two-year statute of limitations.[1]  See Cal. Civ. Proc. Code § 339(1). When exactly that two-year statute begins to run, however, can be a contentious issue.  Ordinarily, a cause of action accrues

---

[1] California Law applies to plaintiff's breach of implied contract claim. See A Slice of Pie, 392 F. Supp. 2d at 307.

"when, under substantive law, the wrongful act is done and the obligation or liability arises, i.e., when a suit may be brought." 3 Witkin Cal. Proc. Actions § 459 (4th ed. 1996). Thus, "accrual is determined by the defendant's acts. And the general rule is that the statute will begin to run despite the plaintiff's ignorance of his cause of action or of the identity of the wrongdoer." Id. at § 460.  This so-called "date of injury" rule represents the fundamental policy underlying statutes of limitation: protecting "potential defendants by affording them an opportunity to gather evidence while the facts are still fresh." Davies v. Krasna, 14 Cal. 3d 502, 512 (Cal. 1975).

An important exception to the "date of injury" rule is the "rule postponing the accrual of certain causes of action until the time of discovery of (or opportunity to discover) the facts." 3 Witkin Cal. Proc. Actions § 463.  This so-called "discovery" rule tempers the harsh impact of the "date of injury" rule in those cases when it would be "manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured." April Enter., Inc. v. KTTV, 147 Cal. App. 3d 805, 826 (Cal. Ct. App. 1983) (quoting Leaf v. City of San Mateo, 104 Cal. App. 3d 398, 406 (Cal. Ct. App. 1980)).  Accordingly, a cause of action under the discovery rule accrues when "plaintiff either 1) actually discovered his injury and its negligent cause

6

or 2) could have discovered injury and cause through the exercise of reasonable diligence." Leaf, 104 Cal. App. 3d at 407 (internal citations and italics omitted). In cases of breach of contract, California courts will apply the "discovery" rule "to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." April Enter., 147 Cal. App. 3d at 832.  In order to rebut the presumption that the "date of injury" rule should apply, "plaintiff must plead facts sufficient to convince the trial judge that delayed discovery was justified.  And when the case is tried on the merits the plaintiff bears the burden of proof on the discovery issue." Id. (internal citations omitted).

   Thus, the central issue presented by Gold's motion is whether the facts alleged in Slice of Pie's complaint show that the breach of implied contract was discovered or should have been discovered within two years of filing the complaint on June 23, 2004.  Gold contends that because Slice of Pie alleges no conduct by Gold after July, 2001, and because Gold was not involved in the development or production of White Chicks, a breach of implied contract could not have occurred after the script was given to Gold in 2001.  See Motion to Dismiss [Doc. #70] at 6.  According to Gold's argument, the point at which the parties entered into the alleged implied contract is coincident with the

moment the alleged contract was breached.

Gold's version of the facts, however, does not comport with the facts alleged in Slice of Pie's complaint. Slice of Pie claims an implied contract was entered into with Gold in 1999 and 2001, when copies of Johnny Bronx were given to Gold. See Fifth Am. Compl. at ¶ 23. Nowhere does Slice of Pie state that the implied contract was breached in 2001. In fact, Slice of Pie does not offer a specific date of breach, ostensibly because they had no way of knowing their screenplay was being used to develop White Chicks until the movie was released.

Thus, while Gold's version of the facts may be true, their motion points to no portion of the complaint from which it could be concluded that Slice of Pie discovered or should have discovered the alleged breach prior to 2004. Nowhere does Slice of Pie state that it discovered a breach in 2001. Rather, on the face of Slice of Pie's complaint, the inference is that plaintiff "discovered" the alleged breach in April, 2004, when plaintiff first read the White Chicks screenplay and "discovered that the general idea, plot, theme and even scenes contained therein were almost identical to that contained [in the Johnny Bronx] screenplay." Id. at ¶¶ 27, 32-33; see also April Enter., 147 Cal. App. 3d at 832 (because defendant allegedly erased video tapes in secret, in breach of an implied contract, the cause of action did not accrue until the plaintiff knew, or should have

known, that the tapes were erased).

In the factually similar case of Kourtis, plaintiffs brought suit for breach of implied contract against the producers of the film, Terminator II, more than ten years after the film was released.  See Kourtis, 419 F.3d 989 (9th Cir. 2005).  The Ninth Circuit, applying California law, held the claim time-barred because "the latest date upon which [plaintiff's] breach-of-contract claims could have accrued is 1991, when [defendant] *released* Terminator II."  Id. at 1000 (emphasis added).  Plaintiff relies on Kourtis to support its contention that the statue of limitations did not begin to run until White Chicks was released into theaters, in June 2004.  See Pl.'s Mem. in Support of Its Opposition to Def., Gold/Miller Company's Second Mot. to Dismiss [Doc. #73] at 3-4.  Plaintiff's only burden at this stage is to plead facts showing that defendants' breach was not discoverable until some time within two years of filing the action.  Whether plaintiff discovered a breach either upon reading the screenplay in April, 2004, or when White Chicks was released in June, 2004, the facts alleged in plaintiff's complaint are sufficient to show the action is not time-barred.

Finally, Gold's reliance on Davies is misplaced.  In Davies, the Supreme Court of California held that a cause of action for breach of contract begins to accrue when plaintiff *learns* of the breach, not when defendant profits commercially from plaintiff's

stolen idea.  See Davies, 14 Cal. 3d at 513-14.  Despite Gold's argument to the contrary, there is nothing in Slice of Pie's complaint that infers plaintiff learned of the breach in 2001 but sat on their rights until White Chicks became commercially successful.  Using the reasoning in Davies, Slice of Pie's cause of action could have accrued when they first learned of the breach, which according to the complaint was sometime in 2004.

Under the facts alleged in the plaintiff's complaint and under California law, defendant's motion to dismiss Slice of Pie's claim as time barred must be denied, since the complaint contains no allegations that Slice of Pie suffered injury or knew of a possible breach before 2004.

c.   Defendant's 12(b)(6) Motion for Failure to State a Claim Has Already Been Adjudicated

Further, Gold's argument that it should not be held accountable for someone else's alleged use of the plaintiff's screenplay misses the point of the plaintiff's claim, and needlessly rehashes an issue already decided by this Court.  Plaintiff is not suing Gold for use of plaintiff's screenplay, but rather for Gold's role in facilitating the passing of the Johnny Bronx screenplay to Wayans without informing plaintiff of Wayans' intended use of it.  See A Slice of Pie, 392 F. Supp. 2d at 309-10.  This Court found Slice of Pie's allegation to be a valid claim:

> Since Gold is alleged to be an established
> agent in the entertainment industry that
> routinely handles scripts on behalf of its
> clients, evidence of the parties' conduct in
> the context of evidence of industry custom
> and practice could indicate mutual assent and
> formation of an implied contract between Gold
> and Slice of Pie.

Id. at 310.  Before any evidence has been offered by either party and absent any allegation in the complaint, Gold's bald assertion that it had no knowledge of the eventual use of the screenplay does nothing more than offer an issue of fact outside the complaint to be decided on a more developed record.

**IV. CONCLUSION**

Pursuant to Rule 12(c), and reading the pleadings in the light most favorable to the plaintiff, this Court declines to determine that plaintiff's claim is time-barred at this stage. Therefore, Gold's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut, this 28th day of July, 2006.**