A Slice of Pie Productions, LLC, :
  Plaintiff, :
          :
v.         :  Case No. 3:04cv1034 (JBA)
          :
Wayans Brothers Entertainment, :
et al.,        :
  Defendants.   :

### RULING ON MOTIONS TO STRIKE [DOCS. ## 123, 124, 128, 140]

Defendants Revolution Studios Distribution Company, LLC,
Sony Pictures Entertainment, Inc., and Wayans Bros. Productions
(collectively, the "Movie Defendants" or "defendants") have
objected to and moved to strike portions of the affidavit of
Jason Coppola and the expert report of Kenneth Dancyger, both
filed in support of plaintiff A Slice of Pie Productions, LLC's
opposition to the Movie Defendants' Motion for Summary Judgment.
See Mots. to Strike Coppola Affs. [Docs. ## 123, 140]; Mots. to
Strike Dancyger Rep. [Docs. ## 124, 128].  The Movie Defendants
seek to strike portions of Coppola's original and supplemental
affidavits contending, inter alia, that they are not based on
personal knowledge, that they include or are based on
inadmissible hearsay, and lack of relevance.  They seek to strike
Dancyger's expert report on grounds that plaintiff failed to
designate Dancyger as an expert within the deadline set by the
Court, contending that Second Circuit case law does not permit

1

expert testimony on the unlawful appropriation issue in a copyright case, that the report does not qualify as competent evidence of "probative similarity" or "striking similarity," and that Dancyger mischaracterizes the works at issue and "employs improper methodology by relying on unprotectible ideas and concepts, scenes-a-faire and random similarities."  For the reasons that follow, the Movie Defendants' Motions relating to the Coppola affidavits will be granted in part and denied in part, and their Motion to strike the Dancyger Report will be granted.[1]

## I.  Coppola Affidavits

The Movie Defendants' objection to the initial Coppola affidavit on grounds that the document qualified neither as an affidavit, because it was not notarized, nor a declaration, because it did not include the place and date of the signing, was

---

[1] The Court has previously observed "the unhelpful phenomenon of litigants' frequent use of motions to strike portions of the opponent's Local Rule 56(a) Statement, and evidence in support, and has concluded that neither the text of Rule 56 nor of Rule 12(f) authorizes use of motions to strike for that purpose."  See Dragon v. I.C. System, Inc., No. 05cv00771 (JBA),  2007 WL 865556, at *1 (D. Conn. Mar. 21, 2007); Ricci v. DeStefano, No. 04cv1109, 2006 WL 2666081 (D. Conn. Sept. 15, 2006).  However, while the Court views summary judgment briefing as "an appropriate and adequate opportunity to call affidavit improprieties to the court's attention," it also acknowledges that "'the federal rules provide no other technique for challenging affidavits, . . . [and that] courts have been willing to view motions to strike as calling the propriety of affidavits into question.'" Dragon, 2007 WL 865556, at *1 (citing Monroe v. Bd. of Educ., 65 F.R.D. 641, 647 (D. Conn. 1975)).

cured by Coppola's supplemental affidavit.[2]

The substantive objections to the affidavit center around a claimed lack of personal knowledge by Coppola of the matters described therein, of reliance on inadmissible hearsay for the opinions and information offered, and a claimed lack of relevance, as follows.[3]

Affidavit Paragraphs 7-13: the Movie Defendants move to strike to these paragraphs by claiming that Coppola's reference to his "understanding" is code for a lack of personal knowledge and the fact that the statements are based on inadmissible hearsay statements. In response, plaintiff asserts that the statements were made on personal knowledge, but such personal knowledge cannot be determined solely on the basis of the fact

_____

[2] However, although plaintiff represents that "[a]ny change in [the supplemental affidavit] was due to inadvertence and does not in any way affect and/or prejudice the [d]efendants," because plaintiff was given permission to supplement Coppola's affidavit only in order to correct the format of the affidavit (i.e. to either include place/date of signing or a notary's signature and stamp), any other changes were unauthorized and will not be considered by the Court.

[3] Plaintiff advances a waiver argument, claiming that "[h]ad the [d]efendants had any such inquiries of Mr. Coppola, the same should have been raised through deposition, the opportunity of which has now been waived." Pl. Mem. [Doc. # 132] at 1. However, plaintiff cites no authority holding that objections to an affidavit submitted in the course of summary judgment briefing are waived if an affiant was never deposed, and Fed. R. Civ. P. 56(e) requires that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

3

that Coppola was a co-principal of plaintiff and co-author of the screenplay and Coppola does not "show affirmatively" by reference to specific involvement in discussions/meetings/decisions relating to the submission of the screenplay that he "is competent to testify to the matters" stated in his affidavit about which he claims generally to have personal knowledge (see Fed. R. Civ. P. 56). Moreover, where Coppola specifically attributes his understanding or knowledge to a statement of another (e.g., paragraph 8 ("I was informed by our (the Plaintiff's) legal agent at the time, Ron Singer . . ."); paragraph 9 ("the Plaintiff was notified through Mr. Singer . . .")), where those statements do not constitute an admission by a party opponent, Coppola's testimony constitutes inadmissible hearsay (as offered for the truth of the matter asserted) and will not be relied on by the Court in its ruling on the pending Motions for Summary Judgment. However, as Coppola claims in paragraph 13 an understanding "through . . . Laurie Bartlett," such testimony is admissible insofar as Bartlett was an agent/representative of defendants and thus her statements to Coppola are non-hearsay party admissions pursuant to Fed. R. Evid. 801(d)(2). Accordingly, paragraphs 7-12 are stricken from the summary judgment record. Paragraph 13 will not be stricken to the extent that Coppola's understanding is based on the statements of Ms. Bartlett.

Affidavit Paragraphs 14, 17-18, 22: the Movie Defendants
move to strike these paragraphs, contending that Coppola's
testimony concerning what he and/or plaintiff "hoped" would come
to pass is irrelevant insofar as uncommunicated expectations are
not relevant to a breach of implied contact claim under the
applicable California law.  See Desny v. Wilder, 299 P.2d 257
(Cal. 1956) ("The law will not in any event, from demands stated
subsequent to the unconditioned disclosure of an abstract idea,
imply a promise to pay for the idea, for its use, or for its
previous disclosure.  The law will not imply a promise to pay for
an idea from the mere facts that the idea has been conveyed, is
valuable, and has been used for profit; this is true even though
the conveyance has been made with the hope or expectation that
some obligation will ensue.").  The Movie Defendants having
raised this issue in their memorandum in support of their Motion
for Summary Judgment, the Court will consider the sufficiency of
plaintiff's rebuttal evidence, including whether plaintiff's
proffer is relevant to rebut defendants' position, in ruling on
the pending Motions for Summary Judgment, but will not strike
this testimony from the summary judgment record.

Affidavit Paragraph 15: the Movie Defendants move to strike
this paragraph because it offers a characterization of the
affidavit of another individual (Ms. Bartlett).  The Court
interprets this paragraph as merely paraphrasing a portion of

another's affidavit for contextual reasons. The Court will draw
its own conclusions about Ms. Barlett's testimony from the text
of her own affidavit, but will not strike this paragraph from the
summary judgment record.

Affidavit Paragraph 16: the Movie Defendants also move to
strike Coppola's characterization of representatives of the Gersh
Agency serving as the "legal agents" of the Wayans Brothers,
which is a determination of law for the Court (at the summary
judgment stage) or for the jury applying law to fact. The Court
interprets Paragraph 16 to indicate Coppola's phrase used to
describe his understanding of the business relationship between
representatives of the Gersh Agency and the Wayans Brothers,
whether or not accurate as a matter of law, and the Court will
reach its own determination as to the legal relationship between
the parties. Defendants' Motion to Strike as to this paragraph
is therefore denied.

Affidavit Paragraphs 19-21: the Court agrees that Coppola's
statements concerning the "basic industry standard, custom and
trade" (paragraph 21) concerning compensation for the use of
submitted ideas are proffered without foundation. However, to
the extent that these paragraphs relay what Mr. Coppola claims
constituted a shared understanding about compensation for use at
the time the screenplay was submitted, the evidentiary
sufficiency of such an understanding will be considered in

relation to plaintiff's breach of implied contact claim in the
Court's determination of the pending Motions for Summary Judgment
and will not be struck from the summary judgment record.

Affidavit Paragraph 23: defendants having raised a relevance
objection to this paragraph in their memorandum in support of
their Motion for Summary Judgment, the Court will consider
whether this evidence is relevant to rebut defendants' position
in ruling on the pending Motions for Summary Judgment, but this
paragraph will not be stricken from the summary judgment record.

Affidavit Paragraph 30, 32: the Court agrees with the Movie
Defendants that Coppola's testimony concerning the similarity
("almost identical" "substantially similar") between plaintiff's
screenplay and the White Chicks film should be struck because its
admissibility cannot be shown since Coppola has not been
designated as or qualified as an expert and, even if he had been
properly disclosed as an expert, his testimony would not be
permitted on the issue of substantial similarity (although it
might be permitted on the issue of similarity probative of
copying).  See infra; Computer Assocs. Int'l, Inc. v. Altai,
Inc., 982 F.2d 693, 713 (2d Cir. 1992).  These paragraphs will
thus be stricken from the summary judgment record.

Accordingly, defendants' Motions to Strike portions of the
Coppola affidavits [Docs. ## 123, 140] are GRANTED in part and
DENIED in part, as set out above.

## II.  Dancyger Report

The Movie Defendants seek to strike the report submitted by plaintiffs' expert, Kenneth Dancyger, (a) for "failure to designate [him as an expert] within the deadline set by the District Court;" (b) because "Second Circuit case law does not permit expert testimony on the unlawful appropriation issue – which is to be evaluated through the so-called 'audience' or 'lay observer' test;" and (c) claiming that Dancyger "mischaracterizes the works and employs improper methodology by relying upon unprotectible ideas and concepts, scenes-a-faire and random similarities."  Am. Obj. to Dancyger Rep. [Doc. # 128] at 1.

The defendants' timeliness argument is persuasive.  Pursuant to the November 7, 2005 Scheduling Order [Doc. # 69], any expert report was to be served by plaintiff by May 15, 2006, but the Dancyger Report was not served until more than eight months later, in January 2007, <u>after</u> the filing of the pending summary judgment motions.  Plaintiff never moved for an extension of the expert discovery deadlines.[4]  Nor has plaintiff articulated any good cause for its delay.  Although plaintiff contends that the late disclosure was due to a failure of defendants to respond to certain discovery requests served on March 6, 2006 and not

---

[4] The Dancyger Report also, as defendants notes, fails to fully comply with Fed. R. Civ. P. 26(a)(2) for failure to include Dancyger's compensation and a listing of other cases in which he has testified as an expert in the past four years.

complied with until May 15, 2006, the plaintiff has not explained
how this 6-week failure to timely comply with discovery requests
hindered the production of its expert given that Dancyger does
not rely on any materials other than the plaintiff's screenplay
and the defendant's film in his report, both of which were in
plaintiff's possession before this action was even commenced.
Moreover, Dancyger's report was still not produced until more
than eight months after the defendant's untimely disclosures.
Thus, plaintiff having never sought an extension of the expert
report deadline, having served its expert report more than eight
months late and after the filing of the pending Motions for
Summary Judgment, and articulating no good cause for the delay,
the Court GRANTS the Motions to Strike Dancyger's Report [Docs.
## 124, 128]. Plaintiff's unjustified and untimely interposition
of the Dancyger Report is antithetical to efficient case
management; to hold otherwise would be to render scheduling
orders irrelevant.

However, to the extent that a substantive review of the
relevance and admissibility of Dancyger's Report will be
instructive should this case survive summary judgment and proceed
to trial, the Court observes that defendants' argument concerning
the inadmissibility of expert testimony in this copyright case is
too broad.

As the parties agree, "[i]n a copyright infringement case,

the plaintiff must show: (i) ownership of a valid copyright; and
(ii) unauthorized copying of the copyrighted work." <u>Jorgensen v.
Epic/Sony Records</u>, 351 F.3d 46, 51 (2d Cir. 2003). "To satisfy
the second element of an infringement claim – the 'unauthorized
copying' element – a plaintiff must show both that his work was
actually copied and that the portion copied amounts to an
improper or unlawful appropriation." <u>Id</u>. (internal quotation
omitted). "Because direct evidence of copying is seldom
available, a plaintiff may establish copying circumstantially by
demonstrating that the person who composed the defendant's work
had access to the copyrighted material, . . . and that there are
similarities between the two works that are probative of
copying." <u>Id</u>. The relationship between access and probative
similarity is an inverse one, "such that the stronger the proof
of similarity, the less proof of access is required . . . where
the works in question are so strikingly similar as to preclude
the possibility of independent creation, copying may be proved
without a showing of access." <u>Id</u>. at 56 (internal quotation
omitted).

The "well-established rule" in the Second Circuit "has been
to limit the use of expert opinion in determining whether works
at issue are substantially similar. [But] expert testimony may
be used to assist the fact finder in ascertaining whether the
defendant had copied any part of the plaintiff's work. . . . To

10

this end, the two works are to be compared in their entirety . .

. [and] in making such comparison resort may properly be made to

expert analysis."[5]  Computer Assocs., 982 F.2d at 713 (citing

Arstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946)); 3 Nimmer on

Copyright § 1303[E][2]); accord Nimmer § 1303[E][3][a] (in

determining whether defendant copied from plaintiff's work, "the

two works are to be compared in their entirety, including both

protectible and nonprotectible material.  Under the Arnstein

doctrine, in making such comparison, resort may properly be made

to expert analysis and dissection," but "the issue of unlawful

appropriation . . . is an issue of fact which a jury is

peculiarly fitted to determine"); Alan Latman, "'Probative

Similarity' as Proof of Copying: Toward Dispelling Some Myths in

---

[5] While plaintiff expresses a lack of certainty as to
whether Second or Ninth Circuit principles apply to this case,
and although the Court has previously determined that California
law applies to the remaining state common law claim for breach of
an implied contract, it is clear that Second Circuit law should
be applied with respect to the copyright infringement claim.  See
In re MetLife Demutualization, No. CV 00-2258 (TCP)(AKT), 2007 WL
1017603, at *8 (E.D.N.Y. Mar. 30, 2007) (citing Center Cadillac,
Inc. v. Bank Leumi Trust Co. of N.Y., 808 F. Supp. 213 (S.D.N.Y.
1992), for the proposition that "federal courts [are] only bound
by precedent set by the Supreme Court and the Court of Appeals
for that Circuit"); Montgomery Cty. Md. v. Metromedia Fiber
Network, Inc., 326 B.R. 483, 489-90 (S.D.N.Y. 2005) (" . . . a
federal district court [] is bound to apply federal laws as they
have been interpreted by the Court of Appeals in the circuit
where it sits. . . . In fact, this court has recognized that
federal courts are competent to decide issues of federal law and
should not be placed in the awkward position of having to apply
the federal law of another circuit when it conflicts with their
own circuit's interpretation.") (citing cases).

Copyright Infringement," 90 Colum. L. Rev. 1187, 1193 (1990)
("Normally, two different standards and modes of proof are
respectively applicable to the two prongs, copying and unlawful
appropriation.  The dissection and analysis of the expert are
appropriate for the issue of copying, and the response of the
ordinary lay hearer is appropriate for the issue of unlawful
appropriation.").[6]

Thus, the Movie Defendants' argument about the
inadmissibility of expert evidence is inapposite if Dancyger's
Report could be read to constitute "dissection and analysis"
probative of whether defendants copied plaintiff's screenplay,
including regarding "striking similarities" which could obviate
the need for proof of access.  While defendants state
conclusorily that the Report does not purport to be probative of
whether copying took place and that no foundation is set for such
testimony, the Report does dissect and analyze each work,
considering a variety of factors (character, dialogue, mood,
theme, pace, and plot, see Rpt. at 3), and opines on "striking
similarities" between the two works on the basis of this
analysis.  Moreover, Dancyger appears to have laid a foundation

---

[6] This standard is in accord with the more general
proposition "that while an expert may provide an opinion to help
a jury or a judge understand a particular fact, 'he may not give
testimony stating ultimate legal conclusions based on those
facts.'"  In re Initial Public Offering Sec. Litig., 174 F. Supp.
2d 61, 64-65 (S.D.N.Y. 2001) (citing United States v. Bilzerian,
926 F.2d 1285, 1294 (2d Cir. 1991)).

for such opinions, including comparison of works across a variety of structural categories, insofar as he has extensive experience with teaching, evaluating, studying, and writing about screen writing, <u>see</u> Dancyger Curriculum Vitae, Rpt. at 44-63. While defendants also take issue with the categories Dancyger uses in his dissection and analysis, claiming that his methodology is flawed, defendants cite the factors to be considered by a fact finder in making the substantial similarity/unlawful appropriation determination (which differ slightly, although not entirely, from the elements considered by Dancyger), <u>see Williams v. Crichton</u>, 84 F.3d 581, 588 (2d Cir. 1996), which factors are not controlling of an expert's opinion regarding whether there are similarities probative of copying.[7]

## III. Conclusion

For the foregoing reasons, defendants' Motions to Strike portions of the Coppola affidavits [Docs. ## 123, 140] are GRANTED in part and DENIED in part. Defendants' Motions to

---

[7] Given this discussion, the plaintiff's claim that, should Dancyger's report/testimony be found to be incompetent and/or irrelevant, the declarations offered by the Wayans brothers should also be excluded, need not be addressed. The Court observes, however, that while Dancyger is designated as an independent "expert" and structurally dissects each work to address the relative similarities between the two, the Wayans brothers speak of their personal experiences with the development of the White Chicks film and their declarations thus concern the purported independent creation of the film on the basis of their personal knowledge.

Strike Dancyger's Report [Docs. ## 124, 128] are GRANTED.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut, this 30th day of May, 2007.**